Lipscomb, J.
It will be necessary to the investigation of the points presented for our consideration in this case, to substantially recite the petition or bill of the appellee in the court below. The petition states that David A. Monegan is the guardian of Jesse Carr, a lunatic. That petitioner had been duly appointed guardian by the county court in Marengo county in the state of Alabama, the county of the domicile of the said lunatic, and of his guardian, the petitioner. That proceedings had been instituted fey the said guardian against the said "Wellborn, in the county of Marshall, the county of the domicile of the defendant, in the said state in the court of chancery, to set aside a pretended sale of certain negroes made by the said lunatic to the said "Wellborn, that a decree was rendered by the Honorable Alexander Bowie, chancellor of the said court, setting aside the said pretended sale as fraudulent and divesting the said Wellborn of all right and title to the said slaves under the said pretended sale, and vesting the title to the same in the petitioner as guardian of the said lunatic and decreeing that they should be delivered up to him as such guardian. It stated that Wellborn had run the said slaves off to Hed river in the republic of Texas. It prays that he should be required to deliver the said slaves and their increase to the petitioner as guardian, and for the value of their services for their detention. It called on the defendant to answer as to the increase of the said slaves, their number, and whether they were not in his possession or what disposition he had made of them. There was a great deal more stated in the petition by way of inducement to the action, and may be regarded as a mere detail of the proceedings in Alabama, but are not thought to *(333) be in any wise material in this court; but we have only recited the material allegations contained in the petition. It was verified by the oath of -the guardian Monegan.
The answer of Wellborn admits his possession of the slaves, the names, ages and sex, with the names and ages of their increase; that these are all then in his possession, excepting one that had died in the state of Alabama; that he sold none of them. He makes no answer or reference to the proceedings of the court of chancery, and the decree of the chancellor. But goes on to set up the validity of the sale, and the capacity of the said Jesse Carr to contract for himself; the fairness of the transaction, and much other matter that would have been proper to have been considered, but no doubt was considered by the chancellor on the final hearing in the state of Alabama. He denies that he had secretly fled with the negroes from Alabama. On the trial of the case the plaintiff in the court below, who is the ap-pellee in this court, produced in evidence an exemplification of the proceedings, and the decree of the chancellor in Alabama, authenticated by the certificate of the . clerk and master, by the chancellor and the governor with the seal of the state, which was admitted although objected by the defendant and excepted to; and the judge charged the jury that the decree was conclusive. Which charge was also excepted to by the appellant.
The jury then found that the record was proven according to the certificates; meaning, I presume accprding to the attesting certificates, but found that the use of the property was not worth more than the support of the slaves.
This case was once before this court under its former organization as the supreme court of the late republic of Texas, on an appeal from the judgment of the court below in favor of the defendant’s general demurrer to the petition, which judgment was reversed, and the demurrer overruled. The opinion of the court went fully into the law of the case, and took and sustained the distinction between proceedings and judgments i/n personam and in rem. It held that the ceedings and decree of the court of chancery in Alabama were in rem and vested the property in the slaves in the guardian, for the use' of the lunatic, Carr.
One of the questions now presented for our consideration is, did the court below err in its charge to the jury, that the decree of the chancellor- was conclusive? We have at the present term of this court, in the case of Phillips v. Lyon, decided that a foreign judgment, in proceedings in personam was prima facie evidence of the debt; and if the language of the court was not explicit in making *(334) the distinction between proceedings in personam and in rem, it was because that in the case then before the court, the judgment was indisputably on proceedings in personam, and of course the opinion and the decision was in reference to that class of cases, and not to be construed as applying to proceedings in rem. Judge Story, after commenting on the proceedings and judgments of foreign tribunals in general, and the effect given to them in other countries, says “ that if the matter in controversy is land or other immovable property, the judgment pronounced by the forum rei sites is held of universal obligation, as to all matters of right and title which it professes to decide in relation thereto;” and in such cases by the general consent of nations, the judgment of the fonem rei sites is held absolutely conolusim. And the same principle is applied to all other cases of proceedings in rem, as to movable property within the jurisdiction of the court pronouncing the judgment. Whatever is settled as to the right or title, or whatever disposition it makes of the property by sale, revendication, transfer or other act will be held valid in every other country where the same question comes directly or indirectly in judgment before any other foreign tribunal. Story Confl. secs. 591 and 592. This is believed to be the doctrine of all courts acknowledging the obligation of international laws, subject, however, to the exception that it may be shown to defeat such effect, that the foreign court pronouncing the judgment or decree had no jurisdiction, or that it was fraudulently obtained. According to the record before us the jurisdiction of the court of chancery in Alabama was not questioned, nor was there any imputation against it of fraud. It would then seem that the court below did not err in the charge on the conclusive character of the decree of the chancery court of Alabama.
The next point presented for consideration is the admissibility of the exemplification of the record of the proceedings in the state of Alabama, as it appears to have been authenticated. This question came directly before us in the case of Phillips v. Lyons, and it was ruled not to be admissible evidence. We shall not repeat the grounds of our opinion, as it will be found by a reference to that case, that they are there stated. In that case the court mainly relied on the rules laid down by Chief Justice Marshall, in Church v. Hubbart, 2 Cranch, 187; and on this point we would be constrained to reverse the judgment, if under the issues, the testimony received was necessary. The rule that all the allegations in a bill not traversed by the answers are to be taken as admitted is believed to be too well settled at this time to admit of argument. It will be seen that the fact of the proceedings in the chancery court of Alabama, and the decree of the *(335) chancellor, for the specific restitution of the negro slave in question, were distinctly and specially alleged in the bill, and that the answer does not traverse them. It was to support these allegations alone, that the evidence under consideration could have had any application, and it was offered to prove facts not denied and consequently admitted. If the answer had traversed the allegations, then it would have devolved on the complainant to have sustained them by legal testimony. There is but one allegation in the complainant’s bill, that the answer traversed, and that altogether an immaterial one; that the defendant had secretly and fraudulently removed the negroes from Alabama to Red River county in Texas. The bill and answer furnished everything material to sustain the complainant’s rights, to the extent claimed except for the services of the negroes, and this was the only inquiry that properly belonged to the jury in the trial in the court below, and their verdict furnishes no ground of dissatisfaction to the appellant, as the jury allowed nothing. It is obvious, the appellant^ did not design in his answer, to question the fact of the decree having been rendered by the chancellor, as charged in the bill; nor the jurisdiction of the court; nor did he intend to charge that it had been fraudulently obtained. He did intend, however, to make a false issue, and thereby draw into the investigation matters that had been disposed of on the hearing of the case before the chancellor in Alabama. Hence his effort to set up the sanity of the lunatic Oarr, and the fairness of his purchase from him. This, it has been shown, he could not do. On the whole, we are of the opinion that although the testimony was not authenticated in a way to make it legal evidence, that yet after rejecting the finding of the jury on that evidence, there is abundantly enough left to sustain the judgment. It is therefore affirmed with costs.